## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHEDAIS JACQUES**<br>**2385 Friesian Road**<br>**York, Pennsylvania 17406**<br><br>    *Plaintiff,*<br><br>**v.**<br><br>**BALTIMORE CITY, MARYLAND:**<br>**BALTIMORE POLICE DEPARTMENT**<br>**242 W. 29th Street**<br>**Baltimore, MD 21211**<br><br>    *Defendant.*<br><br>**Serve:**<br><br>**The Baltimore City Law Department**<br>**Office of Legal Affairs**<br>**C/O City Hall, Room 101**<br>**100 N. Holliday St., Suite 101**<br>**Baltimore MD, 21202**<br><br>**Baltimore Police Headquarters**<br>**601 E. Fayette St.**<br>**Baltimore, MD 21202** | **Case No.: 21-2682**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES

COMES NOW, Chedais Jacques, Plaintiff, (hereinafter "Plaintiff") by and through undersigned counsel, and complains against Defendant, Baltimore City Police Department, (hereinafter "Defendant" or "BPD") and in support thereof states as follows:

## INTRODUCTION

1.  This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII") and the Civil Rights Act of 1866, Section

1

1981(a) ("Section 1981") for Defendant's unlawful harassment and discrimination based on race (African American), and retaliation against Plaintiff, including, but not limited to, Defendant's unlawful imprisonment of Plaintiff, as well as Defendant's discriminatory treatment towards Plaintiff while investigating him as a result of his statutorily-protected activity.

## JURISDICTION AND VENUE

2. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq*., and Section 1981, to redress and enjoin employment practices of the Defendant.

3. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

4. Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Baltimore, Maryland.

5. Additionally, venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendant transacts substantial business in this District, and Defendant maintains employment records related to this action in the District of Maryland.

## EXHAUSTION OF REMEDIES

6. Plaintiff has exhausted all of his administrative remedies.

7. Plaintiff filed a complaint with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission (EEOC) on January 9, 2020, alleging discrimination on the

basis of race (African American) and national origin (Haitian), sexual harassment, and retaliation.

8. A Right-to-Sue letter was issued to Plaintiff from the EEOC on July 22, 2021, which Plaintiff received on July 25, 2021.

9. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## NATURE OF THE ACTION

10. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

11. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

12. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## PARTIES

13. Plaintiff, Chedais Jacques, is an African American Haitian male who is domiciled in York, Pennsylvania.

14. Defendant is a municipal police force, whose jurisdiction encompasses Baltimore, Maryland, the State's largest city.

15. The BPD is the 8th largest municipal police force in the United States, staff by nearly 3,100 civilian and sworn personnel. The Department's jurisdiction covers Maryland's largest city, with a population of 611,648 people.

16. Jacques works at the Baltimore Police Department ("BPD") and is a member of Baltimore City Lodge No. 3, Fraternal Order of Police ("FOP"), which is a Maryland corporation that is designated as the exclusive representative of Baltimore Police Officers holding the ranks of police officer, police agent, flight officer, police sergeant, police lieutenant, and detective. The relationship between employer representative BPD and employee representative Lodge is governed by a Collective Bargaining Agreement ("CBA" or "Agreement").

17. A Memorandum of Understanding II ("MOU II") covers Unit II employees, which include Police Sergeants and Police Lieutenants.

18. The Baltimore City Lodge No. 3, Fraternal Order of Police, Unit II ("Lodge") provides labor management relations, establishes leave and salary requirements, work hours database management for those employed by the police department.

19. During the relevant period, Defendant employed Plaintiff, Officer Chedais Jacques.

20. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

**FACTUAL ALLEGATIONS**

21. Plaintiff, Chedais Jacques, has been employed by Defendant, the Baltimore City Police Department ("BPD") from July 1, 2008, until present, as a Police Officer.

22. The Plaintiff has worked in the Internal Affairs Unit since May 2019.

4

23. On or around August 19, 2020, Plaintiff received a phone call through the "Batters Up" complaint program from a civilian who wished to file a complaint against an officer, Melvin Hill.

24. Based on reason and belief, during the call, the civilian complainant ("complainant") detailed that she had met Officer Hill at the Columbia Mall in Columbia, Maryland, and they became friends. The complainant then informed Plaintiff that her and Officer Hill began a consensual sexual relationship shortly after meeting, despite both parties being married to other individuals. The complainant then expressed that she had just been diagnosed with genital Herpes, which she concluded could only have been transferred from Officer Hill. Based on information and belief, the complainant also stated to Plaintiff that she had heard that Officer Hill had also spread this virus to his wife and another woman. Due to her marital status, complainant was not comfortable filing a complaint. Still, she requested for someone to tell Officer Hill to refrain from knowingly spreading the virus to other women.

25. Due to the sensitivity of the conversation, Plaintiff expressed tremendous sympathy and understanding towards the complainant who was viscerally upset. Plaintiff then, based on the complainant's statements, asked a few follow up questions, to determine the extent of the harm done by Officer Hill, and whether any crimes had been committed pursuant to his investigative authority as an Officer in Internal Affairs.

26. At this point in the conversation, Plaintiff indicated that he had known Officer Hill when they previously worked together over ten (10) years ago, hoping to show empathy with the complainant. Plaintiff then completed the call and gathered all necessary information.

27. After compiling his findings, Plaintiff followed the chain of command and approached his then supervisor in Internal Affairs, Sergeant Lattanzi, to explain the details of the aforementioned phone call. Sergeant Lattanzi advised Plaintiff to discuss this situation with Captain Fernandez. Captain Fernandez instructed Plaintiff and Sergeant Lattanzi to not enter this officially into their Internal Affairs Pro-Active Alert System ("I.A. Pro") as there was no departmental violation, based on evidence known at the time.  Captain Fernandez further instructed Plaintiff and Sergeant Lattanzi to keep the information on hand in case something develops later.

28. Later that day, Plaintiff approached Major Lansey to inform her of the situation. During their conversation, Detective Geddis ("Det. Geddis") from the Ethics Unit stopped by Major Lansey's office.  Major Lansey instructed Plaintiff to inform Detective Geddis about this complaint. Based on reason and belief, Det. Geddis explained that Officer Hill was already under investigation for sexual assault that he allegedly committed against an intoxicated female he had detained.  Plaintiff complied with Major Lansey's instructions and then exited her office.

29. On or around August 20, 2020, the civilian complainant sent Plaintiff three pictures of Officer Hill to Plaintiff's work phone. One photo showed Officer Hill completely naked; one photo showed Officer Hill partially naked, with emphasis on a back tattoo; and the last photo showed Officer Hill fully dressed. Based on reason and belief, the complainant also forwarded Plaintiff several text messages that she believed demonstrated the sexual relationship she had with Officer Hill. In accordance with Captain Fernandez's previous order, Plaintiff did not reply to these messages, but as instructed, detailed their contents in his file "in case something developed later." Further, he believed that as the Ethics

Department was handling a criminal investigation of Officer Hill, best practices dictated that he should not get involved or otherwise interfere with their investigation.

30. On or around August 25, 2020, the complainant sent Plaintiff several more text messages that were sent between herself and Officer Hill, as well as a photo of a handbag. Again, per instructions, Plaintiff did not reply to these messages but detailed their contents in the pertinent file.

31. On or around August 28, 2020, the complainant once again sent Plaintiff four more photos. One photo showed the complainant driving with a white car coming towards her. The complainant captioned the photo, "he is stalking me do something ok I spoke to the state attorney," or words to that effect.  Plaintiff followed his instructions of not engaging complainant but detailing such notes in his file.

32. Unbeknownst to Plaintiff at the time, the civilian complainant believed someone in the police department leaked to Officer Hill that she had complained about him, thus causing Officer Hill to stalk her.  As Plaintiff had indicated that he knew Officer Hill's identity, the complainant assumed it to be him, without anything to corroborate this theory.

33. On or around October 2, 2020, Plaintiff was scheduled to work a normal shift from 7:00 a.m. – 3:00 p.m. Then, around 2:30 p.m., Plaintiff received a call from Sergeant Anthony Faulk from the Ethics Unit stating, "Jack, grab your stuff like you're going home for today and come see me upstairs [in the Ethics Office]." Plaintiff, believing himself to be acting in compliance, then gathered his belongings from the nearby areas and placed those items in his vehicle. At around 2:35 p.m., Sergeant Faulk approached Plaintiff as he was re-entering the building and yelled, "Jack, did I tell you don't go anywhere and don't take anything but to come upstairs?" Plaintiff was immediately taken aback and responded by

asking what was going on and whether he was under arrest. Plaintiff then went back to his desk to grab his personal and work phones and then went upstairs to Sergeant Faulk's office.

34. After he arrived to the office, Sergeant Faulk and Detective Derek Collins placed Plaintiff in a recording interview room. Approximately fifteen (15) minutes later, Sergeant Faulk and Detective Collins entered the room and asked Plaintiff, "do you want to talk to us, or do you need an attorney?" Plaintiff responded that as he had no knowledge of any allegations against him, he would exercise his right to an attorney.

35. Sergeant Faulk replied to Plaintiff that because he requested to have an attorney present, he and Detective Collins will not tell him anything until his attorney arrives, and then they left the room. Sergeant Faulk and Detective Collins re-entered the room approximately thirty (30) minutes later and informed Plaintiff that he was being charged with Hindering a Public Integrity Bureau Investigation.

36. When Plaintiff read the allegation provided to him, he was confused and unaware of its implications.  He then signed the notification and checked the box that indicated he made a request for an attorney. Detective Collins and Sergeant Faulk then exited the room to receive further instructions from the command staff members that were present and observing the interrogation: Deputy Commissioner Nadeau, Captain Fernandez, and Captain Diehl.

37. One (1) hour later, Sergeant Faulk and Detective Geddis entered the room and demanded the passwords to Plaintiff's personal and work phones. Plaintiff, despite not having yet seen his attorney, complied with the investigation, and provided the password for his work phone. Plaintiff next informed the two officers detaining him, Sergeant Faulk and Detective

Geddis, that while his personal phone has no password, he would not consent to them searching its contents without a warrant.

38. Nonetheless, Sergeant Faulk confiscated both of Plaintiff's phones and took them to be stored in a safe downstairs. Upon Sergeant Faulk's return, he warned Plaintiff, "Jacques, I don't want you to walk around my building. If you need water let me know. If you need to make a phone call let me know, and if you need to use the bathroom let me know," or words similar.

39. Sergeant Faulk's statement indicated to Plaintiff that he was being detained, was unable to leave, and would not/ did not have access to his attorney despite his repeated requests. Plaintiff informed the officers detaining him that he needed to pick up his daughter from school and that he had an appointment later in the afternoon, to which they did not respond.

40. Sergeant Faulk informed Plaintiff then, for the first time, that the allegation was considered a "criminal matter." At this point, Plaintiff became increasingly more concerned for his safety and the infringement of the rights afforded  to him under the Law Enforcement Officers' Bill of Rights.

41. Sergeant Faulk left the room, and about thirty (30) minutes later, after deliberately detaining Plaintiff for more than two (2) hours, Detective Collins entered the room and asked, "if we tell you what is going on will you talk to us?" Plaintiff reluctantly replied affirmatively.

42. Detective Geddis then read Plaintiff his Miranda rights and asked Plaintiff whether he knew Officer Melvin Hill and their last time speaking. Detective Geddis then asked if Plaintiff had leaked information to Officer Hill about the complaint that was filed against him in August. Plaintiff replied that he had not spoken to Officer Hill in several years and further,

he did not pass along any information about the pending complaint to him or anyone for that matter.

43. Now, around 6:00pm, a total of three (3) hours since his shift was complete – Plaintiff was eager to have this situation resolved. Plaintiff acquiesced to the detectives, permitting them to corroborate his position via his phone.

44. The detectives left the room to examine Plaintiff's cell phones outside of his view. The detaining officers returned, confirming that there had been no calls or text messages between Plaintiff and Officer Hill, and in fact, Plaintiff did not even have Officer Hill's contact information in his phone.

45. Sergeant Faulk escorted Plaintiff downstairs so that Plaintiff could retrieve his gun and cell phone. Sergeant Faulk mentioned to Plaintiff that when he returns to work Monday, he would need to wait for a detective from the Ethics Unit to escort him in as his authorization to enter the building has been revoked. Plaintiff was confused by this but was delirious from the lengthy interrogation and went home to recuperate.

46. On or around October 5, 2020, when Plaintiff arrived to work, Detective Geddis escorted Plaintiff to an isolated room where he was assigned to work for four (4) days. This reprimand was imposed despite Plaintiff's repeated requests for an attorney to be present and his continued cooperation. During these four (4) days, Plaintiff was regularly demeaned, humiliated, laughed at, and embarrassed by this treatment. Even though he was found cleared of any wrongdoing, and there were only unfounded rumors, he still faced retaliation and harassment.

47. On or around October 8, 2020, around 1:30 p.m., Deputy Commissioner Nadeau sent Sergeant Lattanzi to the upstairs room where Plaintiff was working. Sergeant Lattanzi

ordered Plaintiff to report to his office. Upon entering Sergeant Lattanzi's office, he informed Plaintiff that he knew Plaintiff was innocent of these charges after assessing the surprise on Plaintiff's face. Sergeant Lattanzi further stated that he had been told to detail Plaintiff out of the office, but that he refused because he knew the allegation was false. Sergeant Lattanzi also told Plaintiff that he had instructed Detective Timika Dyson to reinstate his credentials and that he was now re-authorized to work on the floor again.

48. On the way back to his private room, Plaintiff stopped by his Captain's office. There, his Captain offered a threatening message to Plaintiff, reminding him that the State's Attorney was on standby, ready to file criminal charges against him should the allegation be deemed truthful. Plaintiff has not heard any follow up regarding these allegations since.

49. On or around August 26, 2021, over ten months since this interrogation and subsequent reprimand, Defendant served Plaintiff with paperwork detailing a five (5) day suspension without pay in relation to this charge. Plaintiff rejected the offer and requested a trial board.

50. Despite Plaintiff's continued cooperation to demonstrate the falsity of these allegations, he was still treated discriminately, as a criminal and denied the most fundamental or rights that are afforded to him.

51. Defendant argues that Plaintiff's treatment was in accordance with the policy procedures of the Department; however, based on information, belief, and observation, non-Hispanic Caucasian members of the Ethics Unit who are neither immigrants, Haitian, nor African American did not experience this type of treatment even with the same, or more egregious, allegations of misconduct.

52. Plaintiff was traumatized and humiliated by this treatment he received from the Defendant, impacting him both professionally and personally.

53. Due to this malfeasance and misconduct at the hands of his colleagues and superiors, Plaintiff has become fearful of his work environment.

54. Plaintiff has consistently become the target of a pattern of both race and national origin discrimination, further adding to a hostile work environment.

55. Plaintiff is now forced to file suit due to the Defendant's inability to remedy their unlawful conduct, ultimately costing Plaintiff significant financial strain as well as emotional distress.

56. The Defendant's discriminatory and retaliatory practices have been effectuated in violation of both Title VII of the Civil Rights Act and Section 1981.

<u>**COUNT I**</u>

**VIOLATION OF TITLE VII – RACE DISCRIMINATION**

57. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

58. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

59. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is an African American male, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified police officer, as he has approximately thirteen (13) years on the force and maintained the title of Officer, without record of performance issues or misconduct. The

Plaintiff suffered an adverse employment action directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964.

60. Plaintiff is a member of a protected class as an African American man.

61. Because of his race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

62. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

63. Defendant knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his race.

64. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race.

65. Defendant had limited and reprimanded Plaintiff in a way that deprived him of workplace safety and otherwise adversely affected his status as an employee because of his race.

66. Other employees who were similarly situated, but were non-Hispanic Caucasian individuals, which is different from Plaintiff, have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and workplace conditions.

67. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

68. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

69. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

70. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his race.

71. Defendant discriminated against Plaintiff because of his race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

72. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment.

73. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

74. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

75. Further, Defendant's discriminatory treatment and actions are ongoing.

76. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

77. Similarly, situated non-Hispanic Caucasian employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.  Rather, such similarly situated employees who had false allegations made against them would occasionally receive desk duty – without suffering any of the same humiliating & degrading techniques used by Defendant against Plaintiff.

78. Baltimore City Police Department is required to comply with Title VII, but by and through their conduct, have violated the statute.

**COUNT II**

14

**VIOLATION OF TITLE VII – NATIONAL ORIGIN DISCRIMINATION**

79. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

80. A *prima facie* case of national origin discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

81. Here, the four (4) elements of a *prima facie* case of national origin discrimination are met. The Plaintiff is an African American male, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified police officer, as he has approximately thirteen (13) years on the force and maintained the title of Officer, without record of performance issues or misconduct. The Plaintiff suffered an adverse employment action directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964.

82. Plaintiff is a member of a protected class as a Haitian national.

83. Because of his national origin, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

84. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

85. Defendant knew that Plaintiff was an immigrant and a Haitian national prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his national origin.

86. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his national origin.

87. Defendant limited and reprimanded Plaintiff in a way that deprived him of workplace safety and otherwise adversely affected his status as an employee because of his national origin.

88. Other employees who were similarly situated, but were non-Haitian nationals, have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and workplace conditions.

89. Plaintiff's national origin was a determining factor in Defendant's unlawful conduct toward Plaintiff.

90. Plaintiff's national origin was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

91. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

92. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his national origin.

93. Defendant discriminated against Plaintiff because of his national origin by engaging in, tolerating, or failing to prevent national origin discrimination and again by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff once made aware of these transgressions.

94. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment.

95. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

96. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

97. Further, Defendant's discriminatory treatment and actions are ongoing.

98. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

99. Similarly situated non-immigrant and non-Haitian national employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.  Rather, such similarly situated employees who had false allegations made against them would occasionally receive desk duty – without suffering any of the same humiliating & degrading techniques used by Defendant against Plaintiff, prior to any determination of fault.

100.    Baltimore City Police Department is required to comply with Title VII, but by and through their conduct, have violated the statute.

## COUNT III

### VIOLATION OF TITLE VII – RETALIATION

101.    Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

102.    Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges

of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id.* § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986).

103.   Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

104.   Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

105.   Similarly situated employees were not subjected to the same, similar, or any adverse treatment.

106.   Defendant's unlawful retaliatory conduct produced a climate of fear and isolation for Plaintiff and other employees, thereby creating a chilling effect in violation of Title VII.

107.   The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

108.   Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

109.   Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff – because of his participation and opposition to Defendant's discriminatory conduct.

18

110.    Defendant is directly responsible for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment.

111.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

112.    Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

113.    Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

114.    Baltimore City Police Department is required to comply with Title VII, but by and through their conduct, have violated the statute.

115.    The reasons proffered by Defendant for their unlawful conduct are pretextual and Defendant cannot offer any legitimate reason for their unlawful conduct.

116.    Defendant is directly responsible for the discriminatory acts or omissions of its employees while acting within the court and scope of their employment.

117.    Defendant's actions were intentional, reckless, and malicious.

118.    As a direct and proximate cause of Defendant's conduct alleged throughout this complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary

damages (including, but not limited to, past and future loss of income, benefits, and career opportunities), and is entitles to all available legal and equitable remedies.

119.     Plaintiff has incurred lost wages and irreparable harm via loss of reputation, defamation of character impacting him presently and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

<u>**COUNT IV**</u>

**VIOLATION OF SECTION 1981**

120.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

121.     As an African American and Haitian national, Plaintiff is a member of two protected classes.

122.     Because of his race (African American) and national origin (Haitian), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1981.

123.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

124.     Defendant knew that Plaintiff is an African American and Haitian prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of his race.

125.     Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (African American) and national origin (Haitian).

126.     Defendant has limited, segregated, and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee, because of his race (African American) and national origin.

127.     Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

128.     Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

129.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further provide any legitimate reason for its unlawful conduct.

130.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African American).

## <u>COUNT V</u>

## VIOLATION OF MARYLAND FAIR EMPLOYMENT PRACTICES ACT ("FEPA")

131.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

132.     The Maryland Fair Employment Practices Act (FEPA), Md. Code Ann., State Gov't, § 20-601 *et seq*. outlaws discrimination in employment based on race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

133.     Under FEPA, an employer can be held legally responsible if the person responsible for the harassment can make or recommend employment decisions (e.g., hiring and firing, promotion and demotion, and reassignments) **or** directs, supervises, or evaluates the work

21

activities of the employee, even if that person does not have the power to make employment decisions. Additionally, an employer can be liable if its own negligence leads to harassment or enables harassment to continue.

134.     Harassment is defined as unwelcome or offensive conduct that is based on "race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, or disability."

135.     Here, the Plaintiff was subjected to harassment or offensive conduct that is based on race and national origin.

**COUNT VI**

**FALSE IMPRISONMENT**

136.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

137.     Under Maryland law, in order to establish the tort of false imprisonment, the accusing party must prove that a deprivation of liberty occurred without consent and legal justification. *See Ashton v. Brown*, 339 Md. 70, 119, 660 A.2d 447 (1995) (""explaining that 'the necessary elements of a case for false imprisonment are a deprivation of the liberty of another without his [or her] consent and without legal justification'") (citing *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 654, 261 A.2d 731 (1973); *Herrington v. Red Run Corp.*, 148 Md. App. 357, 361, 811 A.2d 894, 896-97 (2002).

138.     Plaintiff was unlawfully and falsely imprisoned for over three (3) hours after the completion of his shift.

139.     Plaintiff was unlawfully and falsely imprisoned and was deprived of his liberty without cause, despite requesting his attorney multiple times.

140.     Plaintiff was unlawfully and falsely imprisoned and was deprived of his liberty upon returning to work, when for four (4) days he was forced to work in a room resembling that of his interrogation room, where he was regularly ridiculed and harassed.

141.     Plaintiff was unlawfully and false imprisoned without his consent and without legal justification.

142.     Plaintiff was not compensated for the additional time he spent unlawfully imprisoned.

143.     Defendant's actions were intentional, reckless, and malicious.

144.     Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

145.     Plaintiff has incurred lost wages, loss of reputation, defamation of character now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Officer Chedais Jacques, respectfully prays that this Court grant him the following relief:

a.  Enter a declaratory judgement finding that the foregoing actions of Defendant violated Title VII, Section 1981, and FEPA;

b.  Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.  Award back pay and compensatory damages in the amount of $750,000 that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost

wages, lost job benefits; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendants alleged herein;

d.   Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

**e.**   Order such other relief as this Court deems just and equitable.


## JURY DEMAND


Plaintiff demands a trial by jury of all issues so triable herein.


Dated: October 18, 2021

Respectfully submitted,

By: /s/ Dionna Maria Lewis
Dionna Maria Lewis, Esq.
(Bar No. 19486)

District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite2098
Washington, D.C.20003
Tel. (202) 486-3478 |
Dionna@DistrictLegalGroup.com

*Counsel for Officer Chedais Jacques*