**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **CHEDAIS JACQUES** | * | |
| | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No. SAG-21-02682** |
| | * | |
| **BALTIMORE CITY POLICE** | * | |
| **DEPARTMENT,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Chedais Jacques ("Plaintiff") filed this action against his employer, Defendant Baltimore City Police Department ("BPD"), asserting claims of discrimination, retaliation, and false imprisonment in violation of state and federal law.  ECF 1.  BPD filed a motion to dismiss the Complaint, ECF 8.  The issues have been fully briefed, ECF 8-1, ECF 9-1, ECF 12, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the following reasons, BPD's Motion will be granted in part and denied in part.

### I.   BACKGROUND

The following facts are derived from the Complaint, ECF 1, and are taken as true for purposes of evaluating BPD's Motion to Dismiss.

Plaintiff, "an African American Haitian male," joined BPD as a Police Officer in July, 2008, and has served in its Internal Affairs Unit since May, 2019.  ECF 1 ¶¶ 13, 21-22.  On August 19, 2020, Plaintiff answered a phone call from a civilian ("the complainant") who wished to lodge a complaint against BPD Officer Melvin Hill.  *Id.* ¶ 23.  During this call, the complainant alleged that she and Officer Hill had engaged in a consensual sexual affair, from which she claimed to

1

have contracted a sexually transmitted infection. *Id*. ¶ 24. In response, Plaintiff "expressed tremendous sympathy and understanding towards the complainant," and mentioned that "that he had known Officer Hill when they previously worked together over ten (10) years ago, hoping to show empathy with the complainant." *Id.* ¶¶ 25-26.

Afterwards, Plaintiff informed his supervisor, Sergeant ("Sgt.") Lattanzi, and Captain ("Capt.") Fernandez about the call. *Id.* ¶ 27. Capt. Fernandez allegedly instructed Plaintiff not to enter the complaint into BPD's Internal Affairs Pro-Active Alert System ("I.A. Pro"), but to "keep the information on hand in case something develops later." *Id.* That same day, Plaintiff described the call to Major Lansey and Detective ("Det.") Geddis, the latter an officer in BPD's Ethics Unit. *Id*. ¶ 28. In response, Det. Geddis explained that Officer Hill was already under investigation for an unrelated matter. *Id*.

In subsequent days, the complainant sent several images of Officer Hill to Plaintiff's work phone. *Id.* ¶ 29. "Plaintiff did not reply to these messages, but as instructed, detailed their contents in his file 'in case something developed later.'" *Id.* Approximately a week thereafter, on August 28, 2020, the complainant sent Plaintiff several more images, including a photo, which "showed the complainant driving with a white car coming towards her." *Id.* ¶ 31. The image was accompanied by a message stating "'he is stalking me do something ok I spoke to the state attorney,' or words to that effect." *Id.* Plaintiff again did not reply to the complainant, but noted the incident in his personal file. *Id.* Plaintiff alleges that unbeknownst to him, the complainant developed a mistaken and uncorroborated theory that he had leaked the details of her complaint to Officer Hill. *Id.* ¶ 32.

On October 2, 2020, Plaintiff received a call from Sgt. Anthony Faulk of BPD's Ethics Unit, who asked Plaintiff to collect his belongs and meet him in the Ethics Office. *Id.* ¶ 33. Upon

2

his arrival, Sgt. Faulk and Det. Derek Collins directed Plaintiff to a recorded interview room, and asked whether he would like an attorney present during questioning. *Id.* ¶ 34. Plaintiff replied affirmatively, prompting Sgt. Faulk to state that neither he nor Det. Collins would tell him anything until an attorney arrived. *Id.* ¶ 35. Sgt. Faulk and Det. Collins subsequently exited, leaving Plaintiff in the room alone. *Id.* Approximately thirty minutes later, Sgt. Faulk and Det. Collins reentered and told Plaintiff that he was being charged with hindering a public integrity bureau investigation. *Id.* Plaintiff executed a written acknowledgement of the charge, on which he indicated that he had requested an attorney. *Id.* Plaintiff alleges that Det. Collins and Sgt. Faulk then exited the room again. *Id.* ¶ 36-37. Roughly one hour later, Sgt. Faulk returned with Det. Geddis and requested the passwords to Plaintiff's personal and work phones. *Id.* ¶ 37. Plaintiff provided the password for his work phone but refused to consent to a search of his personal phone without a warrant. *Id.* Sgt. Faulk allegedly confiscated both devices and stated, "Jacques, I don't want you to walk around my building. If you need water let me know. If you need to make a phone call let me know, and if you need to use the bathroom let me know." *Id.* ¶ 38. Sgt. Faulk indicated that he considered the allegations against Plaintiff to be criminal in nature, and exited the room yet again. *Id.* ¶ 40. Sgt. Faulk and Det. Collins returned roughly thirty minutes later, at which point Plaintiff had been in the interview room for more than two hours. *Id.* ¶ 41. At this point, Det. Collins allegedly asked Plaintiff, "if we tell you what is going on will you talk to us?" to which Plaintiff reluctantly replied that he would. *Id.* Plaintiff was read his *Miranda* rights and informed that he was suspected to have leaked information to Officer Hill regarding the complainant's allegations against him. *Id.* ¶ 42. Plaintiff denied the allegations and allowed the officers to search his personal and work phones to "confirm[] that there had been no calls or text messages between Plaintiff and Officer Hill, and in fact, Plaintiff did not even have Officer Hill's contact information in his phone." *Id.* ¶ 44.

Plaintiff was subsequently allowed to retrieve his belongings and leave for the day. *Id.*¶ 45. Plaintiff was told that upon his return on Monday, he should wait for an officer to escort him into the building because his access had been revoked. *Id.* ¶ 45.

On Monday, October 5, 2020, Det. Geddis escorted Plaintiff to "an isolated room where he was assigned to work for four (4) days." *Id.* ¶ 46. Plaintiff alleges that "[d]uring these four (4) days, [he] was regularly demeaned, humiliated, laughed at, and embarrassed by this treatment." *Id.* On October 8, 2020, Sgt. Lattanzi informed Plaintiff that his credentials had been reinstated and he was authorized to return to his regular work station. *Id.* ¶ 47. Sgt. Lattanzi also allegedly stated that "he had been told to detail Plaintiff out of the office, but that he refused because he knew the allegation was false." *Id.* On the way back to his office, Plaintiff allegedly stopped by his Captain's office, who "remind[ed] him that the State's Attorney was on standby, ready to file criminal charges against him should the allegation be deemed truthful." *Id.* ¶ 48.

In April, 2021,[1] Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging continuing discrimination on the basis of his race, color, and national origin. ECF 8-3. In relevant part, the EEOC charge states:

> The [named officers] accused me of tipping off an officer charged with criminal
> and misconduct behavior . . . They held me against my will for about 3 hours after

---

[1] The Complaint alleges that Plaintiff filed an EEOC charge on January 9, 2020. ECF 1 ¶ 7. This Court, however, understands that date to be a scrivener's error. The EEOC charge itself is dated April 22, 2021. ECF 8-3 at 2. The January, 2020 date reflected in the Complaint is implausible given that the charge describes conduct occurring roughly ten months later, in October, 2020. *See id.* In its memorandum in support of its Motion, BPD stated that "[it] believes this assertion is a typo . . . [and] will not make any legal arguments about the impossibility of the timing of events as asserted in Plaintiff's Complaint." ECF 8-1 at 5 n.2. This Court will also treat the date of the EEOC charge reflected in the Complaint, ECF 1 ¶ 17, as a typo, which may be corrected via an amended complaint. *See, e.g.*, *J&J Sports Prods., Inc. v. Sandoval & Sandoval, Inc.*, 2018 WL 3727944, at *2 (D. Md. Aug. 3, 2018); *S-E-A, Ltd. v. Cornetto*, 2018 WL 3996270, at *1 (D. Md. Aug. 21, 2018). Somewhat puzzlingly, in his opposition to BPD's Motion, Plaintiff states that he "filed his EEOC Charge detailing his injury at the hands of Defendant by January 2021" which also appears incorrect based on the date on the EEOC charge itself. ECF 9-1 at 13.

my regular shift.  They questioned me without an attorney present after requesting
one.  They unlawfully searched my work and personal phone . . . They denied me
access to the premises for about 4 business days.  They had me wait at the front
desk to be escorted to an isolated room . . . [for] the following 4 days . . . I believe
the treatment I received that day is due to my national origin and race.

*Id.*  EEOC issued Plaintiff a right-to-sue letter on July 22, 2021.  ECF 8-4.

On August 26, 2021, BPD served Plaintiff with paperwork detailing a five day suspension

without pay in relation to allegations that he hindered the public integrity bureau's investigation.

ECF 1 ¶ 49.  Plaintiff rejected the offer and requested a trial board.  *Id.*

Plaintiff filed this Complaint against BPD on October 18, 2021, alleging: discrimination

on the basis of his race and national origin in violation of Title VII and the Maryland Fair

Employment Practices Act (Counts I-II, V); retaliation in violation of Title VII (Count III);

discrimination in violation of § 1981 (Count IV); and false imprisonment (Count VI).  ECF 1.

BPD filed a Motion to Dismiss, or in the alternative, for Summary Judgment, ECF 8.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of

a motion to dismiss.  *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley*

*Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393,

408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by

a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of

law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading

requirements of Federal Rule of Civil Procedure 8(a)(2).  That rule provides that a complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The

purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required

to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Federal courts may consider documents incorporated into a complaint by reference without converting a 12(b)(6) motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Similarly, federal courts analyzing a motion to dismiss routinely consider EEOC charges and related documents, even if such documents are not filed with the Complaint. *See Stennis v. Bowie State Univ.*, 236 F. Supp. 3d 903, 907 n. 1 (D. Md. 2017) (observing that "the EEOC charge and its related documents are integral to the Complaint"); *Bowie v. Univ. of Md. Med. Sys.*, No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015).

BPD styled its motion as a motion "in the alternative" seeking summary judgment. *See* ECF 8. Summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011) (citations omitted). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the

nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery.  Here, Plaintiff has done just that, attaching an affidavit describing the discovery he seeks to justify his opposition to the summary judgment motion.  ECF 9-2.  Accordingly, this Court declines to consider BPD's motion as one seeking summary judgment and will evaluate it only under the motion to dismiss standard described above.

## III.  DISCUSSION

### A.  Race and National Origin Discrimination (Counts I-II, V)

In Counts I, II, and V, Plaintiff alleges that BPD unlawfully discriminated against him on the basis of his race and national origin in violation of Title VII and the Maryland Fair Employment Practices Act ("MFEPA").[2]  Because Plaintiff does not provide direct evidence of discrimination, he may establish a prima facie claim by alleging: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.  *Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016); *Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 778 (D. Md. 2020).  A complaint may survive a motion to dismiss even without fully establishing a prima facie claim.  *Johnson v. Baltimore City Police Dep't*, No. CIV.A. ELH-12-2519, 2014 WL 1281602, at *5 (D.

---

[2] Courts "look to federal interpretation of Title VII as relevant authority when interpreting [M]FEPA."  *Richards v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, 2020 WL 639424, at *3 (Md. Ct. Spec. App. Feb. 11, 2020).  Neither party has attempted to distinguish the two statutes, and this Court will accordingly apply the federal standard to both.  *Accord Linton v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, No. CIV. JKB-10-276, 2011 WL 4549177, at *4 (D. Md. Sept. 28, 2011) ("This Court has [] previously applied Title VII case law in adjudicating [M]FEPA claims . . . The parties in this case have not alerted the Court to any applicable differences . . . [and] [t]he Court will therefore apply federal standards to both."); *see also Brown v. Baltimore Police Dep't*, No. CIV.A. RDB-11-00136, 2011 WL 6415366, at *14 (D. Md. Dec. 21, 2011); *Barreto v. SGT, Inc.*, 826 F. App'x 267, 270 (4th Cir. 2020) (applying without discussion Title VII standards to a MFEPA claim).

Md. Mar. 27, 2014) ("at the motion to dismiss stage, [the elements of a prima facie claim] serve only to inform a court's evaluation of the allegations." (citing *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010)).  Rather, as with any other claim, a plaintiff must allege facts sufficient to "permit[s] the court to infer more than the mere possibility of misconduct." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  BPD argues that the Complaint lacks sufficient allegations as to the second, third, and fourth elements of Plaintiff's discrimination claims.  With regards to at least the fourth element, this Court agrees.

The fourth element of a prima facie claim may be shown based "on a comparison to the treatment of similarly situated co-workers of different races or genders, if those colleagues were treated more favorably under similar circumstances."  *Booth*, 186 F. Supp. 3d at 486 (citing *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)).  A comparator should be similarly situated in all relevant aspects.  *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.2 (D. Md. 2013).  "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  *Johnson*, 2014 WL 1281602, at *19 (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)).

The Complaint does not include comparator allegations from which this Court could plausibly infer that Plaintiff's alleged mistreatment is due to his membership in protected classes. The Complaint conclusorily alleges that "similarly situated [non-immigrant and non-Haitian national] employees who had false allegations made against them would occasionally receive desk duty – without suffering any of the same humiliating & degrading techniques used by Defendant against Plaintiff, prior to any determination of fault."  ECF 1 ¶ 99; *see also id.* ¶ 51 ("non-Hispanic

Caucasian members of the Ethics Unit . . . did not experience this type of treatment even with the same, or more egregious, allegations of misconduct."). These allegations are fatally flawed in at least two respects. First, the Complaint is devoid of information suggesting that Plaintiff and the proposed comparators are similarly situated. The Complaint identifies no specific comparator or comparators by name, nor does it describe—even anonymously—any comparators' job titles, responsibilities, or supervisors. Moreover, to the extent the Complaint details information on the comparators, it suggests that their roles are dissimilar from Plaintiff's. *Compare* ECF 1 ¶ 22 (referring to Plaintiff as a member of the Internal Affairs Unit) *with id.* ¶ 51 (characterizing comparators as members of the Ethics Unit). Second, the Complaint does not provide enough factual matter to suggest that in similar circumstances, BPD treated these comparators more favorably than Plaintiff. Although the Complaint alleges that comparators "would occasionally receive desk duty . . . prior to any determination of fault," it offers no information on the substance of the allegations against comparators, nor does it explain how these allegations are analogous to those made against Plaintiff.[3] *See* ECF 1 ¶ 99. Simply put, the Complaint's vague description of comparators do not plausibly allege that they are similar to Plaintiff, and do not allow this Court to infer that these individuals received more favorable treatment.

Because Plaintiff has not alleged comparator evidence from which this Court could infer mistreatment because of his protected statuses, he has not stated plausible Title VII or MFEPA discrimination claims. This Court pauses to note, however, that to state such a claim, Plaintiff must also allege that he suffered a materially adverse employment action, for which he exhausted

---

[3] Notably, to the extent that Plaintiff intends to contrast comparators' "desk duty" with his placement at an isolated work station for four days, the allegations fail as a matter of law. As noted more fully below, Plaintiff's temporary relocation to a less desirable work location cannot serve as the basis of a Title VII claim. *See Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 491-92 (D. Md. 2013)

his administrative remedies.  *See Angelini*, 464 F. Supp. 3d at 778.  The BPD actions described in Plaintiff's EEOC charge and reiterated in the Complaint, however, fall well below the requisite threshold of effecting "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  In relevant part, the EEOC charge and Complaint allege that BPD: (i) asked Plaintiff to remain in the office for approximately three hours after the conclusion of his shift; (ii) questioned him without an attorney; (iii) searched his personal and work phones without a warrant, albeit with his permission; (iv) temporarily revoked his access to the building; and (v) reassigned him to an isolated work station for four days. ECF 1 ¶¶ 35, 43-44, 46.  Far from materially adverse, these alleged actions caused no meaningful change to Plaintiff's employment.  Several of the actions fall squarely within the category of "petty slights, minor annoyance, and simple lack of good manners," to which Title VII is inapplicable. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  While Plaintiff's claim premised on BPD's attempt to suspend him in April, 2021 without pay presents a closer question of material adversity, this Court need not reach the issue until Plaintiff has adequately alleged the existence of similarly situated comparators.  Plaintiff's claims for race and national origin discrimination in violation of Title VII (Counts I-II), and MFEPA (Count V) will be dismissed without prejudice for failure to state a claim.

### B.  Retaliation (Count III)

In Count III, Plaintiff alleges that BPD retaliated against him in violation of Title VII.  BPD argues that this claim must be dismissed because Plaintiff failed to allege retaliation in his EEOC charge.  This Court concludes otherwise, at least as to certain of the alleged retaliation.

To assert a Title VII claim in federal court, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC. *Sawyers*, 946 F. Supp. 2d at 438. Although an "EEOC charge defines the scope of the plaintiff's right to institute a civil suit," it "does not strictly limit a Title VII suit which may follow." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). "[R]ather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* (quoting *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)); *see also Hill v. W. Elec. Co.*, 672 F.2d 381, 390 n.6 (4th Cir. 1982). An "inevitable corollary" to this principle is that a "plaintiff asserting a Title VII claim of retaliation *for filing a previous EEOC charge* . . . may raise the retaliation claim for the first time in federal court." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (emphasis added); *see also Brown v. Univ. of N. Carolina Health Care Sys.*, No. 1:20-CV-0086, 2021 WL 512222, at *6 (M.D.N.C. Feb. 11, 2021) ("Typically, a claim for retaliation that is based upon the filing of an EEOC charge is not subject to the same exhaustion requirements as other Title VII claims."). Conversely, where "the retaliation occurred prior to the filing of the charge, the claim will be held to the exhaustion requirements applicable to other Title VII claims." *Id.* (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 683 (D. Md. 1996)).[4]

Here, Plaintiff's EEOC charge asserts that the offending conduct, which occurred in October, 2020, "is due to my national origin and race." ECF 8-3. On the EEOC charge form,

---

[4] BPD cites several cases in support of its argument that Plaintiff did not exhaust his retaliation claim. *See* ECF 12 at 6-7 (citing *Miles*, 429 F.3d 480; *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147 (4th Cir. 1999); *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019); *Prosa v. Austin*, No. CV ELH-20-3015, 2022 WL 394465, at *22 (D. Md. Feb. 8, 2022)). BPD's reference to this caselaw is inapposite. This Court does not conclude that Plaintiff's EEOC charge exhausted the administrative remedies for a Title VII retaliation claim. Rather, it joins prior courts in concluding that where, as here, the alleged retaliation occurred *because* of Plaintiff's EEOC charge, his claim is not analyzed under the same exhaustion requirements as other Title VII claims. *See, e.g.*, *Brown*, 2021 WL 512222, at *6.

Plaintiff checked the box indicating discrimination based on race and national origin, but did not check the box connotating retaliation. *Id.* Based on the facts detailed in the EEOC charge alone, then, there is no indication that Plaintiff intended to allege retaliation. The contents of the EEOC charge, however, do not preclude Plaintiff's claim that BPD later retaliated against him because he filed it. *See Nealon*, 958 F.2d at 590. Here, liberally construed, Plaintiff appears to allege just that. *See* ECF 1 ¶ 104 ("Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.").

Turning to the substantive allegations, to state a claim for Title VII retaliation, a plaintiff must allege: "(1) that [plaintiff] engaged in a protected activity, (2) that the employer took a materially adverse action against [plaintiff] and (3) [that] there is a causal connection between the protected activity and the adverse action." *Perkins v. Intern. Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). For purposes of the second element, a plaintiff must allege that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 491-92 (D. Md. 2013) (quoting *Madock v. McHugh*, No. ELH–10–2706, 2011 WL 3654460, at *26 (D. Md. Aug. 18, 2011)). The standard for an "adverse action" in a retaliation claim "is less strenuous than the standard in a discrimination claim, because the adverse employment action in a retaliation case need not affect an employee's terms or conditions of employment." *Id.* (internal citations and quotation marks omitted).

Plaintiff's filing of an EEOC Charge constitutes protected activity. *See* ECF 8-3; ECF 1 ¶ 7. Subsequent to the filing of the charge, "[BPD] served Plaintiff with paperwork detailing a five (5) day suspension without pay . . . Plaintiff rejected the offer and requested a trial board." *Id.* ¶

49.   At this stage, Plaintiff plausibly alleges that BPD's initiation of disciplinary charges constituted an adverse action because it may dissuade a reasonable worker from making or supporting a charge of discrimination.[5]   Similarly, Plaintiff has alleged sufficient facts at this juncture to suggest that BPD took the adverse action because Plaintiff filed the charge.   Standing alone, the four-month period between the filing of Plaintiff's EEOC charge and BPD's initiation of disciplinary proceedings may be too attenuated to establish a causal connection.   *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) ("There must also be some degree of temporal proximity to suggest a causal connection.").   In this instance, however, the timing and sequence of BPD's action gives rise to a plausible inference of retaliation.   Roughly one week after Plaintiff was confronted with allegations of misconduct, BPD reinstated his credentials and allowed him to return to his work station, *see* ECF 1 ¶ 47, where he appears to have fulfilled his duties without incident for nearly ten months.   Given BPD's apparent decision not to pursue discipline against Plaintiff in October, 2020, its reinstatement of disciplinary action against Plaintiff in August, 2021—only one month after Plaintiff's EEOC charge was adjudicated—suggests a causal connection.   BPD may well have a legitimate reason for renewing its disciplinary proceedings against Plaintiff after having abandoned such efforts for so many months; at this stage, however, Plaintiff has adequately alleged causation.   Accordingly, BPD's Motion to Dismiss Count III will be denied to the extent the claim is premised on BPD's alleged retaliation for Plaintiff's EEOC charge, and granted insofar as the claim is based on any conduct occurring prior to the filing of that charge.

---

[5] BPD does not argue to the contrary.  Instead, BPD's asserts only that the initiation of disciplinary proceedings falls outside the scope of Plaintiff's EEOC charge.  *See* ECF 12 at 10.

### C. Section 1981 (Count IV)

Count IV of the Complaint alleges that BPD discriminated against Plaintiff on the basis of his race and national origin in violation of 42 U.S.C. § 1981.  BPD argues that the claim is improperly pleaded, and in any event, fails to state a claim under either § 1981 or § 1983.  ECF 8-1 at 18-19.  Plaintiff does not rebut BPD's argument, instead indicating his intent to "voluntarily withdraw[] his Section 1981 claim against Defendant."  ECF 9-1 at 11.

As BPD observes, claims against state actors for violation of rights guaranteed in § 1981 are properly pleaded under § 1983.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) ("the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."); *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).  Thus, Plaintiff's claim under § 1981 (Count IV) will be dismissed with prejudice.

### D. False Imprisonment (Counts VI)

In Count VI, Plaintiff alleges that BPD is liable for his false imprisonment.  BPD argues that dismissal is warranted because Plaintiff's claim is barred by common law state sovereign immunity.  ECF 8-1 at 19.  This Court agrees, and will dismiss Count VI with prejudice.

Unless waived, state sovereign immunity shields the State of Maryland and its agencies from actions for damages arising under state law.  *Est. of Anderson v. Strohman*, 6 F. Supp. 3d 639, 642 (D. Md. 2014).  It is well established that for purposes of state sovereign immunity, BPD is a State agency.  *Id.* (citing *Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 323, 780 A.2d 410, 434 (2001) ("As we have explained, the BCPD is a State agency that has common law State sovereign immunity."); *Mayor & City Council of Baltimore v. Clark*, 404 Md. 13, 24, 944 A.2d 1122, 1128 (2008).  In accordance with this principle, federal courts have consistently determined

that the BPD is insulated from actions based on state common law torts or state constitutional torts. *See Earl v. Taylor*, No. 1:20-CV-01355-CCB, 2021 WL 4458930, at *3 (D. Md. Sept. 29, 2021); *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548-49 (D. Md. 2003); *Nicholson v. Baltimore Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at *9 (D. Md. Apr. 20, 2021); *Corbitt v. Baltimore City Police Dep't*, No. CV RDB-20-3431, 2021 WL 3510579, at *8 (D. Md. Aug. 10, 2021).  Thus, unless waived by statute or necessary implication, state sovereign immunity bars Plaintiff's common law claim for false imprisonment.  Here, there has been no such waiver.  The only potentially relevant waiver of immunity, contained in the Local Government Tort Claims Act ("LGTCA") merely waived BPD's "governmental or sovereign immunity to avoid the duty to defend or indemnify an employee." *Cherkes*, 140 Md. App. at 323 (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-303).  That provision is inapplicable where, as here, Plaintiff has alleged claims against BPD directly, and not against individual officers or BPD employees.  As such, BPD's common law state sovereign immunity remains fully intact, and Plaintiff's claim against BPD for false imprisonment (Count VI) will be dismissed with prejudice.

## IV.  CONCLUSION

For the reasons set forth above, BPD's Motion to Dismiss, ECF 8, is GRANTED WITHOUT PREJUDICE as to Counts I, II, and V; GRANTED WITH PREJUDICE as to Counts IV and VI; and GRANTED IN PART AND DENIED IN PART as to Count III.  A separate Order follows.

Dated: April 8, 2021                             _____/s/_____
                                                 Stephanie A. Gallagher
                                                 United States District Judge