## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| CHEDAIS JACQUES, | |
| | * |
| Plaintiff, | |
| | * |
| | |
| v. | * |
| | |
| | *      Civil No. 21-2682-BAH |
| BALTIMORE CITY POLICE | |
| DEPARTMENT, | * |
| | |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Before the Court is Defendant Baltimore City Police Department's ("Defendant's" or "BPD's") pending motion to dismiss Plaintiff Chedais Jacques's ("Plaintiff's") amended complaint (the "Motion").  ECF 42.  In his First Amended Complaint ("FAC"), Plaintiff asserts five claims against the BPD, his employer, including: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); (2) national origin discrimination in violation of Title VII (Count II); (3) retaliation in violation of Title VII (Count III); (4) retaliation and discrimination in violation of 42 U.S.C. § 1983 (Count IV); and (5) discrimination in violation of the Maryland Fair Employment Practices Act ("FEPA") (Count V).   ECF 39, at 14–26. Defendant attached to its Motion two exhibits: Plaintiff's April 2021 Equal Employment Opportunity Commission ("EEOC") charge, ECF 42-2, and Plaintiff's October 2022 EEOC charge, ECF 42-3 (resubmitted at ECF 49-1[1]).   Plaintiff opposed the Motion, ECF 45, and Defendant replied, ECF 48.  The Court has reviewed all relevant filings, including the memoranda

---

[1] After the Court informed Defendant that it could not electronically open the exhibit attached as ECF 42-3, Defendant resubmitted this exhibit at the Court's direction.  ECF 49.

of law attached to Defendant's Motion and Plaintiff's opposition,[2] and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).   Accordingly, for the reasons stated below, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.   BACKGROUND[3]

The following facts are derived from Plaintiff's FAC, ECF 38, and are taken as true for purposes of evaluating the BPD's Motion to Dismiss.

Plaintiff, "an African American Haitian male," joined the BPD as a Police Officer[4] in July 2008 and has served in its Internal Affairs Unit since May 2019.  ECF 39 ¶¶ 13, 21–22.  On August 19, 2020, Plaintiff answered a phone call from a civilian ("the complainant") who wished to lodge a complaint against BPD Officer Melvin Hill.  *Id.* ¶ 23.  During this call, the complainant alleged that she and Officer Hill had engaged in a consensual sexual relationship, from which she claimed to have contracted a sexually transmitted infection.  *Id.* ¶ 24.  In response, Plaintiff "expressed tremendous sympathy and understanding towards the complainant" and mentioned "that he had known Officer Hill when they previously worked together over ten (10) years ago, hoping to show empathy with the complainant."  *Id.* ¶¶ 25–26.

Plaintiff then informed his supervisors, Sergeant ("Sgt.") Lattanzi, and Captain ("Capt.") Fernandez about the call.  *Id.* ¶ 27.  Capt. Fernandez allegedly instructed Plaintiff not to enter the complaint into the BPD's Internal Affairs Pro-Active Alert System ("I.A. Pro"), but to "keep the information on hand in case something develops later."  *Id.*  That same day, Plaintiff described the

---

[2] The Court references all filings by their respective ECF numbers.

[3] Much of this section repeats what Judge Gallagher explained in her April 8, 2022, memorandum opinion granting in part and denying in part Defendant's motion to dismiss the original complaint. ECF 13, at 1–5.

[4] In his October 28, 2022, EEOC charge, Plaintiff wrote that "I work for [the BPD] as a Sergeant." ECF 49-1, at 1.  Plaintiff's FAC, however, does not include any reference to this change in rank.

call to Major ("Maj.") Lansey and Detective ("Det.") Geddis, the latter an officer in the BPD's Ethics Unit.  *Id.* ¶ 28.  In response, Det. Geddis explained that Officer Hill was already under investigation for an unrelated matter.  *Id.*

In subsequent days, the complainant sent several images of Officer Hill to Plaintiff's work phone.  *Id.* ¶ 29.  "Plaintiff did not reply to these messages, but as instructed, detailed their contents in the relevant file 'in case something developed later.'"  *Id.*  About a week later, on August 28, 2020, the complainant sent Plaintiff several more images, including a photo, which "showed the complainant driving with a white car coming towards her."  *Id.* ¶ 31.  The image was accompanied by a message stating, "'he is stalking me do something ok I spoke to the state attorney,' or words to that effect."  *Id.*  Plaintiff again did not reply to the complainant but noted the incident in the file.  *Id.*  Plaintiff alleges that unbeknownst to him, the complainant developed a mistaken and uncorroborated theory that he had leaked the details of her complaint to Officer Hill.  *Id.* ¶ 32.

On October 2, 2020, Plaintiff received a call from Sgt. Anthony Faulk of the BPD's Ethics Unit, who asked Plaintiff to collect his belongs and meet him in the Ethics Office.  *Id.* ¶ 33.  Upon his arrival, Sgt. Faulk and Det. Derek Collins directed Plaintiff to a "recording interview room" and asked whether he would like an attorney present during questioning.  *Id.* ¶ 34.  Plaintiff replied affirmatively, prompting Sgt. Faulk to state that neither he nor Det. Collins would tell him anything until an attorney arrived.  *Id.* ¶ 35.  Sgt. Faulk and Det. Collins subsequently exited, leaving Plaintiff in the room alone.  *Id.*  Approximately thirty minutes later, Sgt. Faulk and Det. Collins reentered and told Plaintiff that he was being charged with hindering a Public Integrity Bureau ("PIB") investigation.  *Id.*  Plaintiff executed a written acknowledgement of the charge, on which he indicated that he had requested an attorney.  *Id.* ¶ 36.  Plaintiff alleges that Det. Collins and Sgt. Faulk then exited the room again.  *Id.* ¶¶ 36–37.  Roughly one hour later, Sgt. Faulk returned with

Det. Geddis and requested the passwords to Plaintiff's personal and work phones.  *Id.* ¶ 37. Plaintiff provided the password for his work phone but refused to consent to a search of his personal phone without a warrant.  *Id.*  Sgt. Faulk allegedly confiscated both devices and stated, "Jacques, I don't want you to walk around my building.  If you need water let me know.  If you need to make a phone call let me know, and if you need to use the bathroom let me know."  *Id.* ¶ 38.  Sgt. Faulk indicated that he considered the allegations against Plaintiff to be criminal in nature and exited the room yet again.  *Id.* ¶ 40.  Sgt. Faulk and Det. Collins returned roughly thirty minutes later, at which point Plaintiff had been in the interview room for more than two hours.  *Id.* ¶ 41.  At this time, Det. Collins allegedly asked Plaintiff, "if we tell you what is going on will you talk to us?" to which Plaintiff reluctantly replied that he would.  *Id.*  Plaintiff was read his *Miranda* rights and informed that he was suspected to have leaked information to Officer Hill regarding the complainant's allegations against him.  *Id.* ¶ 42.  Plaintiff denied the allegations and allowed the officers to search his personal and work phones to "confirm[] that there had been no calls or text messages between Plaintiff and Officer Hill, and in fact, Plaintiff did not even have Officer Hill's contact information in his phone."  *Id.* ¶ 44.  Plaintiff was subsequently allowed to retrieve his belongings and leave for the day.  *Id.* ¶ 45.  Plaintiff was told that upon his return on Monday, he should wait for an officer to escort him into the building because his access had been revoked.  *Id.* ¶ 45.

On Monday, October 5, 2020, Det. Geddis escorted Plaintiff to "an isolated room where he was assigned to work for four (4) days."  *Id.* ¶ 46.  Plaintiff alleges that "[d]uring these four (4) days, [he] was regularly demeaned, humiliated, laughed at, and embarrassed by this treatment."  *Id.*  On October 8, 2020, Sgt. Lattanzi informed Plaintiff that his credentials had been reinstated and he was authorized to return to his regular workstation.  *Id.* ¶ 47.  Sgt. Lattanzi also allegedly

stated that "he had been told to detail Plaintiff out of the office, but that he refused because he knew the allegation was false." *Id.* On the way back to his office, Plaintiff allegedly stopped by his Captain's office, who "remind[ed] him that the State's Attorney was on standby, ready to file criminal charges against him should the allegation be deemed truthful." *Id.* ¶ 48.

In April 2021,[5] Plaintiff filed a charge with the EEOC, alleging continuing discrimination on the basis of his race, color, and national origin. ECF 42-2. In relevant part, the EEOC charge states:

> The [named officers] accused me of tipping off an officer charged with criminal and misconduct behavior . . . . They held me against my will for about 3 hours after my regular shift. They questioned me without an attorney present after requesting one. They unlawfully searched my work and personal phone. . . . They denied me access to the premises for about 4 business days. They had me wait at the front desk to be escorted to an isolated room . . . [for] the following 4 days . . . . I believe the treatment I received that day is due to my national origin and race.

*Id.* The EEOC issued Plaintiff a right-to-sue letter on July 22, 2021. ECF 39 ¶ 8.

On August 26, 2021, the BPD served Plaintiff with paperwork detailing a five-day suspension without pay in relation to allegations that he hindered the PIB's investigation. ECF 39 ¶ 49. Plaintiff "rejected the offer and requested a trial board." *Id.*

---

[5] The FAC alleges that Plaintiff filed an EEOC charge on January 9, 2020. ECF 39 ¶ 7. This Court, however, understands that date to be a scrivener's error. The EEOC charge itself is dated April 22, 2021. ECF 42-2, at 2. The January 2020 date reflected in the FAC is implausible given that the charge describes conduct occurring roughly ten months later, in October 2020. *See id.* Judge Gallagher pointed out this same error, ECF 13, at 4 n.1, but Plaintiff did not correct the date in the FAC. ECF 39 ¶ 7. Nevertheless, this Court will again treat the date of the EEOC charge reflected in the FAC as a typo, which may be corrected via an additional amended complaint. *See, e.g.*, *J&J Sports Prods., Inc. v. Sandoval & Sandoval, Inc.*, No. CBD-17-1392, 2018 WL 3727944, at *2 (D. Md. Aug. 3, 2018); *S-E-A, Ltd. v. Cornetto*, No. JKB-18-1761, 2018 WL 3996270, at *1 (D. Md. Aug. 21, 2018). In his opposition to the BPD's Motion, Plaintiff states that he "filed his EEOC Charge detailing his injury at the hands of Defendant by January 2021" which also appears incorrect based on the date on the EEOC charge itself. ECF 45-1, at 12. Judge Gallagher also pointed out this issue regarding Plaintiff's opposition to Defendant's original motion to dismiss, ECF 13, at 4 n.1, yet Plaintiff again failed to correct or explain it in his current opposition. ECF 45-1, at 12.

Plaintiff filed his original complaint against the BPD on October 18, 2021, alleging: discrimination on the basis of his race and national origin in violation of Title VII and FEPA (Counts I–II, V); retaliation in violation of Title VII (Count III); discrimination in violation of § 1981 (Count IV); and false imprisonment (Count VI).  ECF 1.  The BPD moved to dismiss the complaint, ECF 8, which Judge Gallagher granted in part and denied in part.  ECFs 13 and 14. Specifically, Judge Gallagher dismissed without prejudice Plaintiff's race and national origin discrimination claims (Counts I–II, V) for failure to "include comparator allegations from which this Court could plausibly infer that Plaintiff's alleged mistreatment is due to his membership in protected classes."  ECF 13, at 9; *see id.* at 8–11.  Judge Gallagher concluded that Plaintiff had adequately pled a plausible retaliation claim only regarding the five-day suspension Plaintiff received in August 2021 for the filing of his April 2021 EEOC charge.  *Id.* at 11–14.  Judge Gallagher also, however, dismissed any retaliation claims "based on any conduct occurring prior to the filing of that charge" for failure to exhaust.  *Id.* at 14.  Judge Gallagher also dismissed Count IV, the § 1981 claim, with prejudice after Plaintiff voluntarily withdrew this claim.  *Id.* at 15 (citing ECF 9-1, at 11).  Lastly, Judge Gallagher dismissed Count VI, the false imprisonment claim, with prejudice on sovereign immunity grounds.  *Id.* at 15–16.

Plaintiff moved for leave to amend the complaint with Defendant's consent, ECF 35, which the Court granted, ECF 38.  In addition to fixing some minor errors, Plaintiff's FAC includes relatively few additional factual allegations.  ECF 39.  These additional allegations fall into four categories: (1) facts related to Plaintiff having been passed over for a "promotion" to the Ethics Unit; (2) facts detailing events occurring in March 2022 that led him to file an additional EEOC charge in October 2022; (3) facts related to allegedly similarly situated comparators outside of

Plaintiff's protected classes; and (4) facts related to Plaintiff's § 1983 claim. *See* ECF 39-1, at 12–14, 21–26.

Plaintiff alleges that "following the beginning of the investigation and his own subsequent complaints," he was passed over for a "promotion" from Internal Affairs to the Ethics Unit. ECF 39 ¶ 56. Plaintiff notes that "Officers in Ethics have the same basic job titles and pay," but that "it is considered a promotion" because officers in Internal Affairs "work in the pit answering phones and taking in complaints" whereas officers in the "Ethics department works upstairs on major cases." *Id.* Plaintiff alleges that a white lieutenant informed him "that he was not good enough to work there." *Id.* Plaintiff contends that he was "passed over . . . in favor of newer and less experienced Officers" "because he was no longer a desirable team member due to the allegations against him and the complaints he has filed against BPD." *Id.*

Plaintiff further alleges that in March 2022, he was transferred from PIB to a different unit. *Id.* ¶ 60. "PIB chose to charge Plaintiff with neglect on [a case on which he had worked in 2019 and 2020], *almost a year later*, alleging that Plaintiff misled the department on the finding due to Plaintiff's interpretation of the [responding] officers' Body Worn Camera ('BWC')." *Id.* (emphasis in original); *see also id.* ¶ 59. "[F]ive (5) layers of supervisors including [Deputy Commissioner] Nadeau and the Legal Department reviewed the case and . . . agreed with [Plaintiff's] finding" in the final investigative report. *Id.* ¶ 61. Sgt. Lattanzi signed the final report rather than Plaintiff because Plaintiff was on vacation at the time. *Id.* Despite the involvement of these other officers, "only Plaintiff was charged for the mistake." *Id.* Deputy Commissioner Nadeau and Maj. Callaghan allegedly informed Plaintiff that "he was being transferred from PIB due to this gross negligent or mis-characteristic of the facts, which 'discredited' Plaintiff's ability to continue working at PIB." *Id.* ¶ 60. Plaintiff alleges that this charge of neglect and subsequent

transfer were "yet another attempt to retaliate against Plaintiff for his prior activity and filing of his Complaint." *Id.* ¶ 61. After the charge was sustained, Plaintiff was suspended for fifteen days without pay. *Id.* ¶ 62. "No supervisors faced any disciplinary action as a result of the neglect." *Id.* The responding officers who were the subjects of the initial investigation "fil[ed] an EEO Complaint against Plaintiff claiming that he was racist against them because they are white," which was "investigated and deemed not sustained." *Id.* ¶ 59.

Plaintiff filed a new EEOC charge regarding this matter in October 2022. ECF 49-1. He alleged that he faced discrimination due to his national origin, race, religion,[6] and retaliation. *Id.* In the new charge, Plaintiff stated:

> I. I work for the above listed employer as Sergeant. In late 2020, I filed a lawsuit against my employer regarding unlawful detainment. In April 2022, I was transferred to a different unit and had a complaint lodged against me stemming from a case that I investigated back in 2019 as the reasoning behind the transfer. I am aware of others that have complaints against them, and they have not been transferred. II. I have not been provided with an explanation for the treatment towards me. III. I believe that I was discriminated against due to my race (black), national origin (Haitian), religion (unknown), and in retaliation for complaining in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* The EEOC issued Plaintiff a right-to-sue letter on November 4, 2022. ECF 39 ¶ 62.

Plaintiff's FAC also includes additional factual allegations regarding similarly situated comparators whom Plaintiff alleges the BPD treated better than Plaintiff because they are not members of Plaintiff's protected classes. *Id.* ¶ 55. Plaintiff names the following people as potential comparators: (1) Det. Dyson, a Black woman who Plaintiff alleges "was charged several times for violations ranging from using the database for personal reasons to theft" but who went back to her desk after "signing her notification"; (2) Det. Lisa Rhia, a Caucasian woman who Plaintiff alleges "was charged several times for violations including misuse of the database and is still working in

---

[6] Plaintiff's FAC does not include any allegations of discrimination based on religion, so he has not stated a claim for religious discrimination on which relief could be granted.

the same office"; (3) Lieutenant ("Lt.") Pope, a Caucasian man who Plaintiff alleges "had several open disciplinary numbers while working at BPD without serious repercussions"; (4) Det. Nave, a Caucasian man "from the Ethics Section [who] has had a complaint filed against him for discrimination, false statements, and misconduct, and to Plaintiff's knowledge is still working"; and (5) Det. Bartozack, a Caucasian man, (6) Det. Plaisance, a Caucasian man, (7) Det. Eugene, a Black man, (8) Det. Shugarman, a Caucasian man, and (9) Det. Pitts, a Black woman, all of whom "had complaints filed against them" but "were not subjected to the same or similar treatment Plaintiff endured." *Id.*

Defendant subsequently filed the instant motion to dismiss the FAC.  ECF 42.

## II.   LEGAL STANDARD

Under Rule 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief").  "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'"  *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits."  *Owens v. Balt. City*

*State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).   The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Stennis v. Bowie State Univ.*, 236 F. Supp. 3d 903, 907 n.1 (D. Md. 2017) (observing that "the EEOC charge and its related documents are integral to the Complaint").

"In the context of a Title VII case, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' [or retaliation] to survive a motion to dismiss[.]"[7]  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)).   Rather, the Court's "inquiry is whether [Plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'"  *Id.* at 617 (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012)).

## III.   ANALYSIS

### A.   National Origin and Race Discrimination (Counts I–II, V)

Plaintiff alleges that his employer discriminated against him based on his race and national origin in violation of Title VII and the FEPA.  ECF 39, at Counts I–II, V.  Title VII of the Civil Rights Act of 1964 "prohibits an employer . . . from discriminating against 'any individual with respect to compensation, terms, conditions, or privileges of employment, because of such

---

[7] An employee-plaintiff who cannot or chooses not to prove their employer's alleged violations of Title VII through direct means can instead establish a prima facie case and take advantage of the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*.  411 U.S. 792, 802–04 (1973).  Generally, once a plaintiff establishes a prima facie case of discrimination or retaliation, the burden of production shifts to the employer to offer a legitimate, nondiscriminatory reason for the allegedly improper actions.  *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981); *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

individual's race, color, religion, sex, or national origin.'" *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020) (quoting 42 U.S.C. § 2000e–2).  Though a plaintiff need not establish a prima facie case at the motion to dismiss stage, "reference to the elements of a claim is helpful to assess whether the plaintiff has stated a plausible claim." *Allgaier v. Microbiologics, Inc.*, No. 1:22-CV-01900-ELH, 2023 WL 2837336, at *8 (D. Md. Apr. 7, 2023).  A Title VII discrimination claim includes the following elements: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190.

Here, Plaintiff, an African American man and Haitian national, has clearly alleged his membership in protected classes based both on race and national origin.  *See* ECF 39 ¶¶ 66, 88.  That does not appear to be in dispute.  Defendant argues, however, that Plaintiff has failed to allege sufficient facts to meet each of the last three elements of a prima facie discrimination case.  ECF 42-1, at 16–23.  Specifically, Defendant contends that Plaintiff has failed to allege that his job performance was satisfactory, *id.* at 16–18, has failed to sufficiently identify similarly situated comparators outside his protected classes that would enable an inference of unlawful disparate treatment, *id.* at 18–21, and has failed demonstrate that he suffered any adverse employment action, *id.* at 21–23.  The Court agrees that Plaintiff has failed to sufficiently allege disparate treatment based on his protected classes, so Plaintiff's discrimination claims must be dismissed.

"A plaintiff is not required to identify a similarly situated white comparator to prove her discrimination claim, so long as she can establish an inference of unlawful discrimination through other means." *Swaso*, 698 F. App'x at 748 (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545–46 (4th Cir. 2003)).  Plaintiffs choosing to rely on comparator evidence to prove their claim "are required to show that they are similar in all relevant respects to their comparator."

*Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citations omitted).  "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  *Id.* (alteration in *Haywood*) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Here, Plaintiff purports to rely on comparator evidence to prove that the BPD unlawfully discriminated against him.  Yet Plaintiff offers no factual basis beyond speculation from which to infer that any of the conduct he endured during the initial PIB investigation in October 2020, as well as the five-day suspension in August 2021 and transfer and suspension in March 2022 were due to his race or national origin.  As an initial matter, the FAC contains absolutely no information about the alleged comparators' respective national origins, so the Court is unable to draw any inferences related to that protected class. ECF 39 ¶ 55.  Nor has Plaintiff directly alleged any facts substantiating an inference that any disparate treatment was based on national origin.  Plaintiff, therefore, has failed to state a plausible claim for relief on his national origin discrimination claim.

Plaintiff has likewise failed to provide sufficient comparator information regarding his race discrimination claim.  Though he has provided the races, sexes, and brief descriptions of misconduct allegations of the suggested comparators, he has failed to allege "enough common features between the individuals to allow [for] a meaningful comparison." *Haywood*, 387 F. App'x at 360 (alteration in *Haywood*) (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).  First, none of the suggested comparators are of the same rank as Plaintiff—most are detectives and one is a lieutenant.[8]  ECF 39 ¶ 55.  Plaintiff does not allege that any of the

---

[8] This is true even if Plaintiff's rank changed from police officer to sergeant, as his October 2022 EEOC charge suggests.  *See* ECF 49-1, at 1.

comparators had the same supervisors as Plaintiff, and the only comparator whose unit the FAC specifies worked in a different unit from Plaintiff.  *See id.*

Nor do Plaintiff's descriptions of the comparators' alleged misconduct provide a sufficient factual basis from which to infer that the BPD treated these comparators more favorably than Plaintiff, let alone due to race.[9]  Plaintiff summarily argues that "[h]e has demonstrated that the comparators provided were outside of his protected class, and further that they received notably different treatment than he did under comparable circumstances."  ECF 45-1, at 5.  But the FAC does not contain sufficient detail to enable the Court to draw such an inference.  Plaintiff alleges that despite facing the misconduct complaints described above, Det. Rhia "is still working in the same office," Lt. Pope continued "working at BPD without serious repercussions," Det. Nave "is still working," and Dets. Bartozack, Plaisance, and Shugarman "were not subject to the same or similar treatment Plaintiff endured."  *Id.*  These allegations are vague, conclusory, and otherwise devoid of any facts to support the inference that these comparators were treated more favorably than Plaintiff.  *See Coleman*, 626 F.3d at 191 (concluding that the plaintiff's comparator allegations were too conclusory to "establish a plausible basis for believing [the white employee] and [the plaintiff] were actually similarly situated or that race was the true basis for [the plaintiff's] termination"); *Ortiz v. Balt. Police Dep't*, No. SAG-22-01396, 2023 WL 1801965, at *4 (D. Md. Feb. 7, 2023) (dismissing a BPD employee's Title VII discrimination claims where the plaintiff failed to establish that his chosen comparators' underlying allegations were similar to his own).

Finally, Plaintiff has "failed to describe how [racial] attributes played a role in any of the alleged discriminatory conduct."  *Felder v. MGM Nat'l Harbor, LLC*, No. 20-2373, 2022 WL

---

[9] Three of Plaintiff's chosen comparators, Dets. Dyson, Eugene, and Pitts, are the same race as Plaintiff.  ECF 39 ¶ 55.  Comparisons to these BPD employees are therefore unhelpful when analyzing a race discrimination claim.

2871905, at *2 (4th Cir. July 21, 2022) (per curiam) (unpublished). While the allegation that non-Black police officers facing misconduct allegations were not subject to the same treatment as Plaintiff "is *consistent* with discrimination, it does not alone support a *reasonable inference* that [Plaintiff's employers] were motivated by bias." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015). The allegations in the FAC that the BPD's alleged mistreatment of Plaintiff was due to his race and/or national origin do not rise above mere speculation. *See Bing*, 959 F.3d at 617 (citing *Coleman*, 626 F.3d at 190).

Plaintiff has therefore failed to state a plausible claim of race or national origin discrimination upon which the Court could grant relief. *See Gaines v. Balt. Police Dep't*, No. ELH-21-1211, 2023 WL 2837334, at *15 (D. Md. Apr. 7, 2023) (collecting cases from this District where the Court dismissed a Title VII discrimination claim based on insufficient comparator allegations in the complaint). Because the Court dismisses the Title VII discrimination claims and because Plaintiff's FEPA claim appears to be based solely on discrimination (not retaliation), Count V is likewise dismissed.[10] FEPA claims are analyzed under the same framework as their federal counterparts. *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 484 n.20 (D. Md. 2013) ("Section 1981 and FEPA claims of discrimination are analyzed under the same framework as Title VII."); *Linton v. Johns Hopkins Applied Physics Lab'y LLC*, No. JKB-10-276, 2011 WL 4549177 (D. Md. Sept. 28, 2011) (noting that this District applies "Title VII case law in adjudicating FEPA claims") (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)).

---

[10] In dismissing Count V for failure to state a claim, the Court need not address whether Defendant is entitled to sovereign immunity or whether Plaintiff complied with the Local Government Tort Claims Act.

### B.      Retaliation (Count III)

"Title VII also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participating in a Title VII investigation or proceeding." *Angelini*, 464 F. Supp. 3d at 776 (citing 42 U.S.C. § 2000e–3).  An employer retaliates against an employee in violation of Title VII when the employer takes an adverse employment action against the employee because of the employee's participation in a Title VII action.  *Id.* at 776–77.

#### 1.      Failure-to-Exhaust Argument

Generally, an employee must exhaust administrative remedies by filing an EEOC charge before filing a civil action in federal court.  *Sawyers v. United Parcel Service*, 946 F. Supp. 2d 432, 438 (D. Md. 2013).  The EEOC charge limits the scope of the civil action but "only [to] the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).  However, that requirement is relaxed in the retaliation context where a plaintiff "assert[s] a Title VII claim of retaliation for filing a previous EEOC charge." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992).  In this case, Judge Gallagher previously denied the BPD's motion to dismiss Plaintiff's retaliation claim "to the extent the claim is premised on BPD's alleged retaliation for Plaintiff's EEOC charge, and granted [the BPD's motion] insofar as the claim is based on any conduct occurring prior to the filing of that charge."  ECF 13, at 14.  Judge Gallagher reasoned that because Plaintiff did not check the "retaliation" box on the April 2021 EEOC charge, he failed to exhaust administrative remedies related to any alleged retaliation that occurred prior to the charge.  *Id.* at 13–14.  However, any retaliation that occurred after the filing of that charge fell into the exception.  *Id.*

At this juncture, Defendant maintains that despite the fact that the allegedly retaliatory action (the suspension in August 2021) occurred after the filing of his initial EEOC charge,

Plaintiff nevertheless has failed to meet the exhaustion requirement because he did not possess "an objectively reasonable belief in light of all the circumstances that a Title VII violation ha[d] happened or [was] in progress" prior to the filing of April 2021 EEOC charge.[11]  ECF 42-1, at 13 (quoting *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018)).  In Defendant's view, if Plaintiff's underlying discrimination claims are dismissed for failure to state a claim, he cannot then claim unlawful retaliation for making those discrimination claims.  *See id.* at 13–14.

Despite Defendant's contentions, *Strothers* does not support its argument.  The quoted language Defendant relies upon comes as part of the Fourth Circuit's discussion of the expansive scope of Title VII's anti-retaliation provision as compared with the anti-discrimination provision. *Strothers*, 895 F.3d at 327.  The Fourth Circuit explained "that the anti-retaliation provision protects employees even when they complain of actions that are not actually unlawful under Title VII."  *Id.* (citing *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (en banc)).  "Because 'Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses,' . . . the greater breadth of the anti-retaliation provision ensures that employees feel free to come forward with their grievances, even when a violation is not yet conclusive based on what one witness might know."  *Id.* (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)) (citing *Boyer-Liberto*, 786 F.3d at 283).  Dismissal of Plaintiff's discrimination claims upon which his original EEOC charge was based does not necessarily doom his retaliation claim as well.  *See Teeter v. Loomis Armored US, LLC*, No. 7:20-CV-00079, 2021 WL 6200506, at *15 (E.D.N.C. Nov. 23, 2021) (citing *Boyer-Liberto*, 786 F.3d at 285, for the proposition that "denial of relief on the [underlying discrimination claim] does not preclude relief on the [subsequent retaliation claim]").  As such, I reach the same

---

[11] Defendant did not raise this argument in its motion to dismiss the initial complaint.  ECF 8-1.

conclusion Judge Gallagher did regarding Defendant's motion to dismiss the initial complaint. Defendant's Motion is denied to the extent Plaintiff's retaliation claim relates to the BPD's alleged retaliation for filing the April 2021 EEOC charge and granted insofar as the claim is based on any conduct that occurred prior to the filing of that charge.

### 2.    Substantive Retaliation Argument

A plaintiff must satisfy three elements to establish a prima facie retaliation case: "(1) that [he] engaged in a protected activity; (2) that [his] employer took an adverse employment action against [him]; and (3) that there was a causal link between the two events." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005).  Participation in a Title VII process constitutes protected activity when the person allegedly facing retaliation "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII.  42 U.S.C. § 2000e–3(a).  Here, Defendant does not dispute that filing an EEOC charge constitutes protected activity.  ECF 42-1, at 24.  Rather, Defendant argues that Plaintiff failed to adequately plead facts meeting the second two elements of a prima facie retaliation claim.  *Id.* at 23–25.

The definition of an adverse employment action in the retaliation context is broader than in the discrimination context; a retaliatory adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 at 68.  "[R]etaliatory actions need not 'affect the terms and conditions of employment' to come within Title VII's prohibition . . . [but] have to be 'materially adverse'— such that they 'might have dissuaded a reasonable worker' from engaging in protected activity." *Strothers*, 895 F.3d at 327 (quoting *Burlington Northern*, 548 U.S. at 63–64, 68).  However, "while the realm of adverse actions for Title VII retaliation claims is broader than for disparate treatment claims, it is not limitless, and 'normally petty slights, minor annoyances, and simple lack of good

manners' will not qualify." *Handley v. Balt. Police Dep't*, No. DLB-20-1054, 2022 WL 3700871, at *11 (D. Md. Aug. 26, 2022) (quoting *Burlington Northern*, 548 U.S. at 68). "This is so because Title VII's 'antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" *Id.* (quoting *Burlington Northern*, 548 U.S. at 67). "A change to a new or different job assignment at the same salary level that is 'less appealing to the employee' or that causes 'modest stress not present in the old position,' constitutes an adverse employment action only where there was a "significant detrimental effect," such as '[a] decrease in compensation, job title, level of responsibility, or opportunity for promotion.'" *Vedula v. Azar*, No. TDC-18-0386, 2020 WL 5500279, at *8 (D. Md. Sept. 11, 2020) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)).

The Court previously denied Defendant's motion to dismiss Plaintiff's retaliation claim as it related to allegedly retaliatory acts for Plaintiff's filing of the April 2021 EEOC charge. ECF 13, at 13–14. Specifically, the Court found that "Plaintiff plausibly allege[d] that [the] BPD's initiation of disciplinary charges constituted an adverse action because it may dissuade a reasonable worker from making or supporting a charge of discrimination." ECF 13, at 14; *see* ECF 39 ¶ 49. The Court also found that Plaintiff had sufficiently alleged causation due to the temporal proximity between the adjudication of his EEOC charge in July 2021 and the BPD's decision to suspend him without pay for five days the following month. ECF 13, at 14. The Court hereby adopts the reasoning in Judge Gallagher's memorandum opinion and finds that Plaintiff has sufficiently alleged a Title VII retaliation claim based on the BPD's alleged initiation of disciplinary proceedings after his April 2021 EEOC charge was adjudicated.

At this early stage of litigation and when viewed in the light most favorable to Plaintiff, he has also adequately pled that he suffered an adverse employment action when he was allegedly

denied a "promotion"[12] to the Ethics Unit because his protected activity made him an undesirable employee, ECF 39 ¶ 56, and when he was allegedly singled out, suspended without pay, and transferred out of PIB in March 2022 purportedly because of his "gross negligence" on an internal investigation despite Plaintiff's findings having been reviewed without correction by multiple supervisors, *id.* ¶¶ 60–61.  Taken together as pled and interpreted in the light most favorable to Plaintiff, these actions "might have dissuaded a reasonable worker" from engaging in protected activity.  *Burlington Northern*, 548 U.S. at 63–64, 68; *see Grant v. Balt. Police Dep't*, No. RDB-21-2173, 2022 WL 1321593, at *7 (D. Md. May 3, 2022) (finding that a BPD employee sufficiently alleged that she suffered an adverse action when she was denied several requested transfers after engaging in protected activity but ultimately finding that she failed to plausibly allege causation); *Yampierre v. Balt. Police Dep't*, No. ELH-21-1209, 2022 WL 3577268, at *37 (D. Md. Aug. 18, 2022) (finding a BPD officer had sufficiently pled adverse action when she alleged she was reassigned to work as a "medical locator" and transferred to a patrol post and declining to find, at the dismissal stage, whether these reassignments imposed a significant detrimental impact on the plaintiff's employment); *Ortiz*, 2023 WL 1801965, at *6 (declining to dismiss a retaliation claim by a BPD officer when the BPD initiated disciplinary proceedings only against the plaintiff "and not against others with similar involvement" long after the incident on which those proceedings were based occurred); *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (noting that classic examples of adverse employment actions in the more stringent discrimination context include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibilities, or reduced opportunities for promotion").  Though Plaintiff has not specified when

---

[12] Plaintiff concedes that the "promotion" is not a literal promotion but explains that "[w]hile Officers in Ethics have the same basic job titles and pay, it is considered a promotion to be placed in Ethics."  ECF 39 ¶ 56.

the alleged failure-to-promote action took place, he alleges it occurred "following the beginning of the investigation and his own subsequent complaints," which the Court infers in Plaintiff's favor to mean it happened after the filing of his April 2021 EEOC charge.  ECF 39 ¶ 56.  The Court pauses to note, however, that if this event occurred prior to the April 2021 EEOC, then the retaliation claim based on this event is dismissed for failure to exhaust, as noted above.

Plaintiff has also sufficiently alleged causation to defeat dismissal.  At this early stage of the litigation, a plaintiff does not have a high burden to sufficiently allege causation.  *See Strothers*, 895 F.3d at 335 ("As this Court has held, establishing a 'causal relationship' at the *prima facie* stage is not an onerous burden."); *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012) ("[V]ery little evidence of a causal connection is required to establish a prima facie case of retaliation." (citation omitted)).  At this stage of the litigation, he has adequately pled that the BPD took these adverse actions against him because he engaged in protected activity.  *See Ortiz*, 2023 WL 1801965, at *6 ("[O]n the facts alleged, initiation of new disciplinary proceeding months or years after the underlying incidents, against Plaintiff only and not against others with similar involvement, suffice to state a retaliation claim at this early stage.").  Defendant's Motion is therefore denied insofar as it involves any retaliatory allegations subsequent to Plaintiff's EEOC April 2021 charge.

### C.      Section 1983 (Count IV)

In Count IV of the FAC, Plaintiff alleges pursuant to 42 U.S.C. § 1983 that the BPD violated the Civil Rights Act of 1866, codified at 42 U.S.C. § 1981, and the First Amendment of the United States Constitution.  ECF 39 ¶¶ 120–41.  With the enactment of § 1983, Congress created a cause of action for plaintiffs alleging violations "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States committed by a "person [acting] under

color of any" state law.  42 U.S.C. § 1983.  Plaintiffs cannot succeed on a theory of vicarious liability under § 1983; they must instead show that individual defendants personally acted to violated plaintiffs' rights.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  "The elements of a prima facie case under § 1981 are the same as under Title VII."  *Thomas v. City of Annapolis*, 851 F. App'x 341, 347 (4th Cir. 2021) (citing *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 n.1 (4th Cir. 2004)).

To recover against a municipality under § 1983, a plaintiff must establish that a municipality's official policy or custom caused a violation of the plaintiff's constitutional or statutory rights.  *Connick*, 563 U.S. at 60–61 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)); *see also Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989)) (instructing that in § 1983 cases against a municipal entity based on violations of § 1981, a plaintiff must still show that the violation resulted from an official policy or custom).  A plaintiff can establish the existence of a municipality's official policy or custom through the following four means:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).  Plaintiff appears to rely only on the last two avenues of proving an official policy or custom.  *See* ECF 39 ¶¶ 127–29.

"A plaintiff who seeks to establish *Monell* liability based on inadequate training must demonstrate '(1) the nature of the training, (2) that the training was a deliberate or conscious choice by the municipality, and (3) that the [official's] conduct resulted from said training.'" *Gaines*, 2023 WL 2837334, at *29 (internal quotation marks omitted) (quoting *Lewis v. Simms*, No. AW-11-2172, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012)).  Here, Plaintiff has not alleged any specific facts here beyond the conclusory allegation that "Defendant failed to adopt clear policies and failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily-protected activities within the Police Department."  ECF 39 ¶ 127.  Such a conclusory allegation, without more, is insufficient to state a plausible *Monell* claim on a failure-to-train theory.

Plaintiff has also failed to adequately plead a *Monell* claim based on persistent and widespread practice that amounts to official custom or policy.  The Court will not infer that a custom or policy exists which violates § 1983 based only on "isolated constitutional deprivations by municipal employees."  *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).  Here, Plaintiff concedes in his opposition that "the actions that BPD took against Plaintiff *exemplified* the practice of retaliation throughout BPD in an effort to quiet those who speak out against corruption that has become persistent and widespread as to be considered a custom."  ECF 45-1, at 10 (emphasis added).  "[A]side from . . . vague references to the overall institutional problems of the BPD, plaintiff makes no allegations as to how the discrimination [he] asserts is connected to these broader issues."  *Gaines*, 2023 WL 2837334, at *28.  A single plaintiff pleading alleged mistreatment and conclusively asserting that such treatment is an example of a wider practice is not sufficient to turn a Title VII claim into a § 1983 claim.  *See id.* at *27 (citing *Milligan*, 743 F.2d at 230).  To adequately plead a *Monell* claim, a complaint must include more

22

facts that could enable the Court to infer that the allegedly impermissible policy affected more than just the plaintiff.  Plaintiff has not done so here and thus his § 1983 claim must be dismissed.

>    **D.    Dismissal With or Without Prejudice**

Because Plaintiff has already amended his complaint once and because he does not explain how further amendments would enable him to plausible state a claim for relief as to Counts I, II, IV, and V of the FAC, dismissal with prejudice is appropriate here.  *See Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, No. JKB-19-1854, 2020 WL 2512421, at *2 (D. Md. May 15, 2020), *aff'd*, No. 20-1643, 2020 WL 7230263 (4th Cir. Sept. 28, 2020); *Rahman El v. Nationstar Mortg., LLC*, No. 8:20-CV-0435-PX, 2020 WL 7263529, at *3 (D. Md. Dec. 9, 2020); *see also Gaines*, 2023 WL 2837334, at *18, *23, *31, *32.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, Defendant's Motion is granted in part and denied in part.  Counts I, II, IV, and V of the FAC are dismissed with prejudice for failure to state a plausible claim for which relief could be granted. Count III is dismissed in part with prejudice insofar as it relates to any allegedly retaliatory conduct occurring before Plaintiff filed his first EEOC charge in April 2021.  Defendant's Motion is denied as to Count III related to any post-April 2021 allegations.  A separate implementing Order will follow.

Dated: <u>May 2, 2023</u>                                    <u>          /s/          </u>
                                                                                    Brendan A. Hurson
                                                                                    United States Magistrate Judge